COBB, Judge.
The appellant, Robert Thomas, was convicted of murder, a lesser included offense of the offense of capital murder as charged in the indictment. The appellant was sentenced to 30 years’ imprisonment. He raises three issues in this direct appeal. One of those issues, the failure of the trial court to charge the jury on the lesser included offense of reckless manslaughter, has merit and our resolution of that issue entitles the appellant to a new trial.
I.
This case involves a shooting in which Thomas Ambers was killed. Because the appellant does not present a question of the sufficiency of the evidence, we will summarize only those facts necessary to our discussion of the issue of reckless manslaughter.
The appellant claims that the trial court erred in failing to charge the jury on reckless manslaughter over the objection of the appellant’s counsel. In denying the charge, the trial judge stated that no evidence of recklessness has been presented that would necessitate such an instruction. (R. 551.) The trial court instead instructed the jury regarding heat-of-passion manslaughter. However, when the defendant testified, he stated that he had recklessly fired the shots that killed Mr. Ambers.
The appellant testified that he and his companion, Bernard Jones, were attempting to buy a gun that Thomas Ambers and Clifton Ambers, his brother, were selling. The transaction was taking place in an automobile. They began to argue over the price, and the appellant got out of the car. The appellant was standing on the driver’s side of the car when Mr. Jones and Thomas Ambers began to “tussle” on the passenger side of the car. (R. 475.)
“Q: (By appellant’s counsel): What did you do then?
“A: (By appellant): Stood there panicked and just watched for a minute.
“Q: And then what happened?
“A: Then I went around on the passenger side, and I told Bernard, they call him Dog, and I said run Dog, run.
“Q: Who had the gun at that time?
“A: I had pulled — I had a gun. I pulled it out then.
“Q: Who had the gun, any guns in the car?
“A: All I know, I couldn’t see who had possession of the gun. I just know they was wrestling.
“Q: Do you know how many guns they had in the ear?
“A: No, sir.
*267 “Q: What happened after you told that man to run?
“A: I shot three times in the car and ran behind him.
“Q: Did you aim at anybody?
“A: No, sir, I didn’t know if he had the gun or not, and I was just trying — I didn’t want to get shot in the back, so I just shot so I could run.
“Q: How did you shoot? Were the shots fired at once or ... ?
“A: I just shot three times real quick, and turned around and ran.”
(R. 476-77.) A police officer investigating the homicide testified that the Clifton Ambers, in a statement to the police, said that Thomas Ambers had reached for a gun he kept under the ear seat before he was shot by the appellant. (R. 468.) In addition, a bystander corroborated the appellant’s claim that the victim had a gun in his possession in the car on the day in question, shortly before his encounter with the appellant. (R. 580.)
The Alabama Supreme Court held in Ex parte Stork, 475 So.2d 623 (Ala.1985), “[E]very accused is entitled to have charges given which would not be misleading, which correctly state the law of his ease, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.” (quoting Chavers v. State, 361 So.2d 1106 (Ala.1978)). Accord, Burns v. State, 229 Ala. 68,155 So. 561 (1934).
Section 13A-6-3, Ala.Code 1975, provides that one commits the offense of manslaughter if he “recklessly causes the death of another person.” The appellant’s requested charge on reckless manslaughter, reading as follows, was a correct statement of the law:
“The Court charges the jury that embraced or included in the indictment under which the defendant is being tried is the offense of manslaughter, which is recklessly causing the death of another person: herein the victim, and if you believe from the evidence beyond a reasonable doubt that the defendant is guilty of manslaughter as the Court has instructed you the jury and if you convict the defendant of this offense, the form of your verdict should be, we, the jury find the defendant guilty of manslaughter.”
(C. 34.)
This case is analogous to McLaughlin v. State, 586 So.2d 267 (Ala.Crim.App.1991). In McLaughlin, as here, the trial court rejected a requested charge on reckless manslaughter but charged the jury on sudden heat-of-passion manslaughter. The jury, like the jury here, ultimately rejected heat-of-passion manslaughter and convicted the appellant of murder. We held that the trial court’s failure to charge on reckless manslaughter could not be harmless error. Judge Bowen, writing for the majority in McLaughlin, stated:
“Here, the jury’s rejection of sudden heat of passion manslaughter cannot be deemed an implicit rejection of the theory underlying reckless manslaughter. The offense of sudden heat of passion manslaughter identified in §§ 13A-6-2(b) and 13A-6-3(a)(2) sets out ‘the law of mitigating an intentional murder to manslaughter if committed under a naturally engendering passion.’ Ala.Code 1975, § 13A-6-2(b) (Commentary at 151).... However, the offense of manslaughter identified in § 13A-6-3(a)(1) describes a reckless homicide. Thus, the jury’s rejection of sudden heat of passion manslaughter did not represent a repudiation of the less culpable mental state of recklessness; it represented a repudiation of an intentional homicide committed ‘under a naturally engendering passion.’ ”
586 So.2d at 272. (First and last emphasis original; other emphasis added.)
There was evidence, if believed by the jury, to support the appellant’s claim of reckless manslaughter. As this court held in Anderson v. State, 507 So.2d 580 (Ala.Crim.App.1987), “The ‘safer’ practice is to charge upon all degrees of homicide: ‘(I)t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.’ Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, *268 39 So.2d 37 (1948),” cert. denied, 251 Ala. 696, 39 So.2d 39 (Ala.1949).
Because evidence was presented from which the jury might have found that the acts that resulted in the shooting of Thomas Ambers were reckless rather than intentional, there was a rational basis for an instruction on reckless manslaughter, and the failure to give that instruction was not harmless. McLaughlin. Consequently, it was error to refuse to give the charge on reckless manslaughter.
II.
The appellant also claims that he was prejudiced by the trial court’s refusal to charge the jury on the effects of alcohol and drugs on the victim. The trial court stipulated that the cocaine metabolite was present in the urine of the deceased, although no evidence was presented as to the quantity. (R. 561.) There was also some cocaine detected in the victim’s blood. (R. 561.) A forensic pathologist testified as to the level of alcohol in the victim’s blood. (R. 289-90.) The pathologist stated that the level of alcohol was very low, but that fluid replacement en route to the hospital would have had “some dilutional effect.” (R. 302.) The appellant presented no further evidence regarding the victim’s use of alcohol or drugs. The trial court instructed the jury on the law of self defense. However, the court refused to charge the jury as requested by the appellant regarding the effects of alcohol and drugs, which may have been important to the appellant’s self defense claim. See, Wood v. State, 347 So.2d 1001 (Ala.Crim.App.), cert. denied, 347 So.2d 1005 (Ala.1977).
Because we are reversing the judgment on another issue, it is not necessary to reach the merits of this issue. However, we would suggest that upon retrial the trial court consider instructing the jury on the issue of the effects of alcohol and drugs on the victim’s system, in light of the holdings in Brown v. State, 627 So.2d 1112 (Ala.Crim.App.1993); Smith v. State, 594 So.2d 224 (Ala.Crim.App.1991); and Quinlivan v. State, 555 So.2d 802, 805 (Ala.Crim.App.1989).
The appellant’s final contention — that he was harmed by the fact that the jury was allowed to consider the charge of capital murder because he was acquitted of that charge — is without merit.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur.